M/D 1

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

2019 JUL 12  A 11: 25

Jeffrey Paul Eugene Stout
Full name and prison name of
Plaintiff(s)

DEBRA P. ~~HACKETT, CLERK~~
U.S. DISTRICT ~~COURT~~
MIDDLE DISTRICT ~~ALA~~

v.

John Crow
Jimmy Thomas
Joshua Bethea
Detri Mayes
~~illegible~~
Wexford Health
Name of person(s) who violated your
constitutional rights. (List the names
of all the person.)

CIVIL ACTION NO. 2:19-cv-494-WKW-CSC
(To be supplied by Clerk of U.S. District
Court)

**DEMAND FOR JURY TRIAL**

I.  PREVIOUS LAWSUITS

   A.  Have you begun other lawsuits in state or federal court dealing with the same or similar facts involved in this action? YES ☐  No ☒

   B.  Have you begun other lawsuits in state or federal court relating to your imprisonment? YES ☐  NO ☒

   C.  If your answer to A or B is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

      1.  Parties to this previous lawsuit:

         Plaintiff(s) _____

         Defendant(s) _____

      2.  Court (if federal court, name the district; if state court, name the county)

_____

3. Docket number _____

4. Name of judge to whom case was assigned _____

5. Disposition (for example: was the case dismissed? Was it appealed? Is it still pending?) _____

6. Approximate date of filing lawsuit _____

7. Approximate date of disposition _____

II. PLACE OF PRESENT CONFINEMENT  Limestone Correctional Facility (ADOC)

PLACE OR INSTITUTION WHERE INCIDENT OCCURRED  Staton CF, and Kilby RCC

III. NAME AND ADDRESS OF INDIVIDUAL(S) YOU ALLEGE VIOLATED YOUR CONSTITUTIONAL RIGHTS.

| | NAME | ADDRESS |
|---|---|---|
| 1. | John Crow | Staton CF |
| 2. | Jimmy Thomas | Kilby RCC |
| 3. | Joshua Bethea | Staton CF |
| 4. | Deteri Mayes | Staton CF |
| 5. | Wexford ~~Medical Resource~~ Health | N/A |
| 6. | | |

IV. THE DATE UPON WHICH SAID VIOLATION OCCURRED  SEE ATTACHED Pages

V. STATE BRIEFLY THE GROUNDS ON WHICH YOU BASE YOUR ALLEGATION THAT YOUR CONSTITUTIONAL RIGHTS ARE BEING VIOLATED:

GROUND ONE:  SEE ATTACHED Pages

STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND. (State as best you can the time, place and manner and person involved.)

SEE ATTACHED PAGES

**GROUND TWO:**

SEE ATTACHED PAGES

**SUPPORTING FACTS:**

SEE ATTACHED PAGES

**GROUND THREE:**

SEE ATTACHED PAGES

**SUPPORTING FACTS:**

SEE ATTACHED PAGES

VI. STATE BRIEFLY EXACTLY WHAT YOU WANT THE COURT TO DO FOR YOU. MAKE NO LEGAL ARGUMENT. CITE NO CASES OR STATUTES.

See attached pages

_____
Signature of plaintiff(s)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 6/25/19
         (Date)

_____
Signature of plaintiff(s)

## DEFENDANTS

1. Defendant John Crow is a Warden of the Alabama Department of Corrections who at all times mentioned in this complaint held the title of Warden and was assigned to Staton Correctional Facility. He is legally responsible for the operation of Staton C.F., and for the welfare of all the inmates of that prison.

2. Defendant Jimmy Thomas is a Warden of the Alabama Department of Corrections who at all times mentioned in this complaint held the title of Warden and was assigned to Kilby RCC. He is legally responsible for the operation of Kilby RCC and for the welfare of all the inmates of that prison.

3. Defendant Joshua Bethea is a Correctional Officer of the Alabama Department of Corrections who at all times mentioned in this complaint held the title of Correctional Officer and was assigned to Staton Correctional Facility.

4. Defendant Deteri Mayes is a Correctional Officer of the Alabama Department of Corrections who at all times mentioned in this complaint held the title of Correctional Officer and was assigned to Staton Correctional Facility.

5. Defendant Wexford Health is a Medical Provider contracted with Alabama Department of Corrections who at all times mentioned in this complaint was the Medical Provider for Alabama Department of Corrections. Wexford is legally responsible for the conduct of its Medical Staff and for the Medical Welfare of all the inmates of the ADOC.

6. At all times mentioned in this Complaint each defendant acted under the color of State law.

Pg 1 of 1 pgs

# FACTS

The Plaintiff, Jeffrey Paul Eugene Stout, states claims, that are all related to the same incident or issue, pursuant to violations of his Constitutional Rights grounded in the 14 Amendments Substantial Due-Process Rights/Clause, to be free of "State-Created Danger" and under the "Special Relationship Theory" and 8th Amendments prohibition of cruel and unusual punishment, to be free of "Excessive Force" and deprivation of a "Basic Human Need".

The plaintiff alleges that the following allegations of facts will be proved through these findings in this Court:

1. Warden John Crow, Warden Jimmy Thomas, C.O.1 Joshua Bethea and C.O.1 Deter: Mayes are all State-Merit-System Employee's working for the appointing Authority- Alabama Department of Corrections as Wardens and Correctional Officers, respectively.

2. Jeffrey Paul Eugene Stout was and is a convicted inmate with the Ala. Dept. of Correction through his conviction and incarceration in ADOC.

3. That Stout being an incarcerated inmate within ADOC, the Supreme Court of the United States (SCOTUS) has imposed on the State and Prison officials a special duty owed to Stout and other similarly situated individuals, by virtue of the State depriving him of his liberty, against his will, so that in certain respects, he is unable to care for himself, a corresponding duty to assume some responsibility for his safekeeping from harm from other inmates and from Correctional Officers alike.

4. This duty to protect arises from the limitations the State imposed upon Stout's Freedom to act on his own behalf.

5. The State's affirmative restraint on an Individual's Liberty "through incarceration" is the compulsion required to create a 'special relationship' And invoke the protection of the Due Process Clause.

6. Absent a "Special Relationship," the state has no duty to protect nor liability from failing to protect a person under the due process clause of the 14 Amendment from violence at the hands of a third party or another inmate.

7. In September, 2018[1], inmate Seay (It is believed Seay's first name is Cordelious) and Inmate Jeffrey Stout were both inmates of Staton Correctional Facility, of the Alabama Dept. of Corrections.

8. On or about the middle of September, 2018, Inmate Seay had been up for 4 days straight shooting Methaphedimin (ice) intravenously. An inmate in D-dorm, stabbed Seay multiple times, in face, head, etc. Upon the officer escorting Seay out of the dorm Seay stated multiple times that he would "be back and will stab everybody!". The person that stabbed Seay was never apprehended. Warden John Crow was aware of this fact.

9. Warden John Crow, the ADOC official who is legally responsible for the operation of Staton prison and for the welfare of all the inmates of that prison, was made aware of this incident and the threats Seay made, when Crow came to the dorm.

10. Several inmates along with Stout, who were assigned to D-dorm, told the Cube operator and Warden Crow, that Seay made threats to stab them and feared that if Seay was allowed back to population he would carry out his threats.

11. Disregarding Stouts and other inmates pleas, Warden Crow ordered Seay's return to population. Upon returning to pop, Seay walked in D-dorm, pulled out a knife and stabbed the first inmate he saw, Stout. Stout was stabbed, twice, once in arm and once in the right hand, as he attempted to block Seay from stabbing him in the face. Stout suffered severe pain, and feared for his life.

12. Upon being attacked Stout started screaming "Help me officers, help me!" to no avail. Not one officer in the dorm, responded, they just stood around the background watching Stout get stabbed.

13. Inmates in the dorm intervened to grab Seay and stop his attack on Stout. Stout was unarmed. The inmates prevented Stout from being stabbed again. The officers did nothing.

14. Upon the inmates wrestling Seay down and disarming him, officers then came forward and cuff Seay and escorte him out of the dorm, for the second time in one day.

---

[1] Stout was not given the precise date, that is located in his medical files, and ADOC files, upon request of such.

Other officers arrived and sprayed Seay and some officers took Stout to the laundry to wash the blood off him and then carried him to the infirmary.

15. By allowing Seay back in the dorm after he made specific threats "to stab everybody", Crow this was the proximate cause of the injuries suffered by Stout. Had Crow simply placed Seay in lock-up like all other inmates that are security hazards, this incident would not have happened and Stout would have been in a better position than if Crow hadn't released Seay to population. Because Stout told several D.O.C employees prior to Seay's release back to population of the threats made and the fear he had of Seay carrying these threat out, the Warden Crow and officers knew of the danger Seay presented.

16. Once in the infirmary, a body chart was done on Stout, and the medical provider stitched up Stouts arm, and informed Stout that the tendon were severed in his right hand and would require surgery to repair. Stout was not taken to the free-world hospital to begin the process of correcting his injury, on the day he was stabbed. The Warden Crow and Wexford (Medical Provider) waited until the beginning of October 2018, 10 to 14 days after the stabbing and severing of his tendons to take Stout to Jackson Medical Center in Montgomery, Al for surgery and treatment of his right hand.

17. The Medical practitioner, after recognizing the severity of the injuries, through the proper chains, informed Warden Crow, that prolonged delay would be detrimental to correcting Stouts injury, because the severed tendons would began to contract to a point were even if attached would still prevent full usage of his right hand, with deliberate indifference to Stouts Health and safety, Wexford and Crow delayed to get Stout the immediate medical attention he needed to make sure he would have better chances at getting his tendons repaired promptly, thus giving him full usage of his Right Hand. Stout is Right handed.

18. The prolonged delay in getting Stout to the hospital to began the process of repair to his severed tendons was the proximate cause of him losing significant mobility in his right hand. This was a deliberate action, with total indifference to Stouts health and safety. Crow and Wexford (Medical Provider) prolonged delays are the proximate cause of Stouts disabled right hand.

Pg 3 of 10 pgs

19. For days Stout was forced to wait, in excruciating pain, to be taken to the hospital to treat his right hand.

20. Prior to going to the Hospital, 6 days after Stout got stabbed in Sept, 2018, Warden Crow had Stout escorted to his office. During the visit, Crow told Stout, that He "should not have allowed Seay back into [his] population after being informed that Seay had been high on Meth 4 days and made those loud verbal threats to stab everyone. [He] understood the violent culture in [his] prison, and that due to the overcrowding and drugs coming in, [his] officer's just could not adequately keep each inmate safe". That "it is just too many of you all."

21. Warden Crow then told Stout that he was going to disapprove his and Seay's disciplinary reports and coerced Stout to sign a living agreement with Seay Stating "you two are going back to population and better not hear of no further incidents, or you're going to lock up".

22. Stout pleaded with Crow to not force him back into population in the same dorm with the inmate that stabbed him, to no avail. Stout and Seay, were placed right back in population in the same dorm.

23. Crow, knowing of the violent Nature of the prison caused by the overcrowding and drugs, still chose to return Seay to population instead of having him placed in segregation after making the threats and being under the influence of drugs for 4 days straight. Crow knowing he could not adequately keep all inmates safe, made the deliberate chose to return Seay back to population, to the same dorm (D-dorm) he had just told "[He] will Stab everyone", not once but twice, with no regard for Stouts or other inmates life, safety or health.

24. Stout was unable to sleep for 48-hours because of his fear that his life was in danger and he knew that this placement was at the orders of Warden Crow. Stout made repeated request to Capt. Howard, Capt. Holstick, Lt. Hines and several officers including an officer Bethea, to no avail. All Stout's pleas fell on deaf ears. In his mind he was sure Crow placed him back in population, in the same dorm with Seay, for Seay to finish what he started, to kill Stout.

25. From the time Stout was stabbed until the time he was finally taken to the hospital - Jackson Medical Center - Stout was given no pain medication.

26. Once Stout was taken to the hospital for surgery to repair the severed tendons, the MD/Surgeon, informed Stout that because it took so long for ADOC to bring him that his tendons have contracted and that he may not be able to fully repair Stouts hand. The Sergeon prescribed pain medication after the surgery. Stouts hand was placed in a cast. Once Stout was returned to the prison, Wexford discontinued all pain medication. For (5) five months after the injury to his hand, Stout has suffered excrutiating pain in his hand and Wexford refused to give him anything to relieve pain, other than motrin.

27. The one surgery was not able to repair the damage to Stout's hand and now Stout, who is Right Handed, is totally disabled in his Right hand.

28. The Stabbing by Seay, of Stout, was totally forseeable because Seay leveled specific threats of "I'm going to stab everyone", as he was being escorted out and stated, like he knew something no one else knew, he said "I'll be back".

29. Crow, after hearing about Seay's threat to stab everyone and hearing that Seay had been high on Meth for 4 days straight, with 4 to 5 hours of time to make a decision on Seay, acting with a willful disregard for Stout and all the other inmates safety, within the dorm, Crow decided to let Seay back into population and back into the dorm he had just left and lobbed those threats at, instead of placing Seay in Segregation and listing the reason as "Unknown Enemy".

30. Crow and his staff failed to adequately search Seay's person when he was being released and allowed back in the dorm. Because Crow and his staff did not search Seay's person, Seay entered the dorm with a prison made knife and stabbed the first person he saw - Stout.

31. The cube operator and rovers in the dorm failed to intervene when Seay started stabbing Stout upon his return. Instead, the cube operator and rovers just stood transfixed to their spot and did nothing to try and stop Seay or seperate Seay from Stout. These officers did not use their spray or batons, they just stood there, and watched.

32. Warden Crow and his staff failed to take protective measures to ensure that Seay was not armed when he entered the dorm.

33. The rovers and cube operator failed to sound an alarm notifying other officers that Seay was attacking another inmate in the dorm, upon his return to the dorm, just as he walked in.

34. On October 11th, 2018, Stout had made numerous complaints to Lt. Totty, Capt. Howard and C.O.1 Bethea, ~~[redacted]~~ that he fears for his life in D-dorm and request a bed change. Officer Bethea told Stout that if Stout request a bed change again he's going to "kick" Stouts "Ass", and put the rest of his body in a cast, referring to Stout right hand that was in a cast.

35. A few hours later, two inmates had been stabbed in the dorm with Stout. Seay approached Stout and told Stout he will stab Stout again and kill him, and will get away with it if Stout didn't pay him an unspecified sum of money.

36. Officer Mayes called "pill call" moments later, as Stout was heading to "pill call" officer Bethea said "No pill call", denying Stout to go get his medication for his right hand. Stout stated to Bethea and Mayes, that inmate "Seay said he's going to stab him again and get away with it and that he was scared for his life and must be moved out of the dorm for his safety, when Bethea punched Stout

screaming "I told you I was gone kick your ass if you asked to be moved again", just for Stout expressing his fears, clearly unprovoked excessive force.

37. Stout fearing for his life, and not able to defend himself due to his right hand immobile in a hard cast, took off running trying to gain seperation from the officer's attack and was tackled to the ground. Bethea and Mayes began punching and kicking Stout excessively in every regards especially since it was not in response to any well meaningful reason, but to punish Stout. Stout pleaded for the officer's to stop, that he just had surgery on his hand, which was unequivocal by the cast on his hand, to no avail. A large crowd of inmates rushed out the dorm and rushed the officer's attacking Stout, as Stout was balled up in fetal position on the ground. Stout attempted to get up off the ground and was put in a vicious chokehold by Bethea, until inmates pried his arms loose. Lt. Totty, Sgt. Murphy Davis and a couple more officer's arrived and immediately escorted Stout to the infirmary. Stout was not sprayed nor put in hand cuffs, because it was clear Stout was the victim of an attack.

38. Once arriving to the infirmary Bethea and Mayes were bleeding from what appeared to be cuts, recieved by other inmates in the melee and admitted as much in the infirmary to Lt. Totty, in front of Sgt Davis, C.O. Carter, Nurse Woods, Ms. Lee, Ms. Bentley and Ms. Miller.

39. "I and I" came and seen Stout shortly after, and Stouts cast was cut off and the "I and I" officer, was not a medical provider and did it in deliberate indifference to Stouts Health and Safety, and to any pain in would cause Stout. After cutting the cast off, "I and I" refused to take Stout to the hospital to have his hand positioned back in it's specific position the hand surgeon had it in, and the cast replaced. No weapon was found.

40. Stout was shortly later transferred to Kilby RCC and placed in Segregation under investigation.

40. On October 16th, 2018, Lt. Jamal Sewell of Staton Correctional Facility came to Kilby RCC to hold Stout's Disciplinary Hearing, although Stout never recieved no disciplinary report, of such. Nevertheless, Sewell told Stout he found him "guilty" and recommended sanctions of 45 days segregation, 60 days No outside, and Reclass, amoungst numerous sanctions.

41. Stout asked Sewell how can he find Stout guilty of a Rule violation, without serving Stout notice of the violation, nor holding a hearing. Sewell stated Warden Crow told him to find Stout guilty. Sewell said he was just following orders. Stout was taken back to Seg.

42. Stout was never served a notice of any Rule Violation, no hearing was held, yet Stout was found guilty. Sewell, did not call the officer's Bethea and Mayes to be witnesses, that had direct knowledge of the incident. Neither was the inmate Combs, that allegedly stated Stout assaulted the officers, called forth. The arresting officer was never present either, however it was documented that he answer Stouts question's. Stout was never present during this alleged questionare.

43. On October 17th, 2018 Warden Jimmy Thomas, of Kilby RCC, who is legally responsible for the operation of Kilby RCC and for the welfare of all the inmates of that prison, approved the Disciplinary and recommended Sanction's against Stout, even though it was unequivocal Stout was not given a fair hearing, that the Sanctions of Disciplinary Seg., No outside restriction and reclass, would prevent Stout from coming out of his cell to exercise, because inmates are taken outside to exercise, thus clearly depriving Stout of his basic human need.

44. On or about October 18th, Stout sent a Request to Warden Thomas of the issue, in regards to Stout not being allowed out his cell, to go outside and exercise, as other inmates, and that he was never given a hearing on his charge but was found guilty. Warden Thomas never wrote back or respond to the request.

45. On or about Oct. 25th, 2018, Warden Thomas came around for Seg. Board, in which Stout brought the situation to his attention. After Stout got through explaining to Warden Thomas the issue, Thomas said "This is prison. You're an inmate. Get used to it!" And left.

46. Warden Thomas showed deliberate indifference for the safety and concerns of Stout by, imposing a punishment that was cruel and unusual, when he deprived Stout of a basic human need, coming out of a Seg. cell to exercise. Stout would not had suffered emotional distress if Thomas never imposed such a sanction on Stout.

47. Stout was kept locked in a cell by himself, not allowed to come out nor go outside to exercise. Stout asked an officer making his rounds and taking up a exercise list, why was he not allowed to come out his cell to exercise and the officer stated that Stout was on "outside restriction".

48. On November 9th, 2018, Stout was transferred to Limestone Corr. Fac. Stout was placed in Segregation. Stout was still not allowed to come out his cell to exercise. Stout suffered physical pain and emotional distress, from Warden Thomas depriving him of coming out of his cell for 60 days.

49. On November 27, 2018, a Reclassification hearing was held for Stout as an extension of the Disciplinary Sanctions. Stout was allowed to call witnesses in his defense. Stout called CO Bethea, CO Carter, Inmate Combs, Inmate Belser and Nurse Bailey. Beathea stated "yes" he did say Stout was not the inmate that assaulted him. Carter stated "yes" he was in the infirmary when Stout and the officers came in, and "yes" he was present when Mayes and Bethea both, told Lt. Totty Stout did not assault them. Combs stated "yes" he was "pressured and coerced" to give a false statement on Stout, by "Lt. Hine and another Lt." and that he did not see

Stout assault the officers as alleged, Belser stated "yes" he witnessed the incident, and "No" Stout was NOT the inmate who assaulted the officer as alleged, and "yes" he did witness a crowd of inmates "intervene" and rush the officers while Stout was on the ground. Nurse Bailey, stated she was not in the room at the time, but that "Nurses Tabitha Woods, Seale Lee, Ms. Miller and Ms. Bentley all stated they heard officer Mayes and Bethea say inmate Stout was not the inmate who stabbed them."

50. Stout has been in Seg for more than 270 days, to date.

51. Defendants John Crow, Wexford Medical Provider, Jimmy Thomas, Joshua Bethea and Deteri Mayes actions violated plaintiff Stouts clearly established Rights under the Eightth and Fourteenth Amendments to the United States Constitution and was the proximite cause of plaintiff Stouts severe pain, suffering and physical injury and emotional distress.

50. Plaintiff Stout has no adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irrepairably injured by the conduct of the defendants unless this court grants declaratory and injunctive relief which plaintiff seeks.

Done this 25th day of June, 2019.

Jeffrey P. Stout

## INJURIES

1. Stab wound to the left upper arm that required stitches. Plaintiff arm was bruised, immobile & in pain for 4 to 6 weeks.

2. Stab wound to right hand that required freeworld surgery repair. Plaintiff hand was immobile and in great pain for 6 months. Plaintiff still has cronic pain and nerve damage to hand and right hand remains disabled. Plaintiff is Right Handed.

3. Scratches and bruises over Plaintiffs body.

4. Emotional Distress, plaintiff has been in emotional pain and suffering.

5. Injury to Plaintiffs Eighth Amendment Rights.

6. Injury to Plaintiffs Fourteenth Amendment Rights.

*Jeffrey P.E. Stout*

Pg 1 of 1 pgs

## RELIEF

1. A declaration that the acts and omission described herein violated Plaintiffs Rights under the Constitution and Laws of the United States.

2. To issue an injuction ordering defendants and interested party, to to give plaintiff proper treatment and such for right hand and to release him from Segregation, restoring his custody Medium 4 and removing Disciplinary Report from his File.

3. The plaintiff seeks compensatory damages against John Crow in the amount of $50,000.

4. The plaintiff seeks compensatory damages against Wexford Medical Provider in the amount of $50,000.

5. The plaintiff seeks compensatory damages against Jimmy Thomas, Joshua Bethea and Deteri Mayes in the amount of $25,000, severally.

6. The plaintiff seeks punitive damages against John Crow and Wexford Medical Provider in the amount of $50,000, severally.

7. The plaintiff seeks punitive damages against Jimmy Thomas, Joshua Bethea and Deteri Mayes in the amount of $15,000, severally.

Pg 1 of 2 pgs

8. Plaintiff also seeks jury trial on all issue triable by jury.

9. Plaintiff also seeks recovery of cost in this suit; and

10. Any additional relief this court deems ~~[struck]~~ Just, proper and equitable.

*Jeffrey E. Stout*

Pg 2 of 2 pgs.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after reasonable oppurtunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the clerks office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the clerks office may result in the dismissal of my case.

Jeffrey Paul Eugene Stout
#259963
28779 Nick Davis Rd.
Harvest, Al 35749

I declare under penalty of perjury that the foregoing is true and correct.
Executed on 25th day of June, 2019.

Jeffrey ~~S~~
#259963/Bed#D-16
LCF
28779 Nick Davis Rd.
Harvest, Al 35749




Legal
Mail

LEGAL
MAIL

Office of Clerk
United States District Court
One Church Street, Suite B-110
Montgomery, Al 36104-4018



**GINA J. ISHMAN**
**CIRCUIT CLERK**
**MONTGOMERY COUNTY COURTHOUSE**
**P.O. BOX 1667**
**MONTGOMERY, ALABAMA 36102-1667**



Clerk of the U.S. District Court
Middle District of Alabama
One Church St
Montgomery AL 36104